Stephen J. Kottmeier (State Bar No. 077060)
sjk@hopkinscarley.com
Jay M. Ross (State Bar No. 151759)
jross@hopkinscarley.com
Brent D. Meyer (State Bar No. 266152)
bmeyer@hopkinscarley.com
HOPKINS & CARLEY
A Law Corporation
The Letitia Building
70 South First Street
San Jose, California 95113-2406

*mailing address:*
P.O. Box 1469
San Jose, CA 95109-1469
Telephone: (408) 286-9800
Facsimile: (408) 998-4790

Attorneys for Secured Creditor
HERITAGE BANK OF COMMERCE

Eric A. Nyberg, Esq. (State Bar No. 131105)
e.nyberg@kornfieldlaw.com
Chris D. Kuhner, Esq. (State Bar No. 173291)
c.kuhner@kornfieldlaw.com
KORNFIELD, NYBERG,
BENDES & KUHNER, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for Debtor
I2A TECHNOLOGIES, INC.

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 14-44239-CN |
| I2A TECHNOLOGIES, INC., | Chapter 11 |
| Debtor. | **SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIENS ON PROPERTY OF THE ESTATE** |

Hopkins & Carley
Attorneys At Law
San Jose

114\1175822.3                                    -1-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-04291-CN

Case: 14-44239    Doc# 41    Filed: 12/04/14    Entered: 12/04/14 14:58:28    Page 1 of 13

# INTRODUCTORY STATEMENT

The Debtor in I2A TECHNOLOGIES, INC. ("i2a" or "Debtor") seeks to use approximately $111,760.00 of cash collateral for the month of December 2014, plus such additional cash collateral that will be set forth in subsequent operating budget and cash flow projections, of the entity with the senior interest in it, Heritage Bank of Commerce, ("HBC" or "Bank"). Wells Fargo Bank may also have an interest in the cash collateral junior to that of HBC. The purpose of using these sums over three months is to permit the Debtor to operate and pay essential expenses for wages, inventory purchases, taxes, rent and other operating expenses. The initial period for which approval to use cash is sought is through the final hearing. After a final hearing, approval to use cash would extend through the balance of the three month budget period, provided that the Debtor and HBC could extend the period for use of cash collateral upon written agreement between them including agreement upon an extended budget. Adequate protection proposed to HBC consists of the payment of $8,000.00 per month, a replacement lien for cash used onto collateral to which the HBC's lien would have attached had there been no bankruptcy, and a super-priority claim to the extent that adequate protection proves inadequate and there is a decline in the liquidation value of HBC's collateral. HBC has requested that i2a represent that it and its counsel are aware of no basis to challenge the validity or priority of HBC's lien but said representation is to be binding upon it only and no other parties, including any subsequently appointed trustee. A limited carve-out is provided for trustee's fees and compensation and quarterly fees.

Accordingly, i2a and secured creditor HBC hereby enter into an agreement for use of cash collateral and for adequate protection and stipulate as follows:

# FACTUAL RECITALS

A. On October 20, 2014 (the "Petition Date"), i2a filed a voluntary petition to commence a case (the "Case") under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California, Oakland Division (the "Bankruptcy Court").

B. i2a operates a production facility where it designs, manufactures, assembles, and

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1175822.3 -2-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-44239 CN

Case: 14-44239    Doc# 41    Filed: 12/04/14    Entered: 12/04/14 14:58:28    Page 2 of 13

packages a variety of semiconductors. i2a is operating its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

C. Before the filing of the petition herein, and as part of its ongoing business operations, i2a obtained financing from HBC, (the "Loan"), as set forth in certain financing instruments, documents, and agreements (collectively, the "Loan Documents"), including the following:

    1. That certain Promissory Note (the "i2a Note"), dated December 23, 2010, in the principal amount of $1,830,000.00, and the accompanying Business Loan Agreement, also dated December 23, 2010 (the "Business Loan Agreement");

    2. That certain Commercial Security Agreement dated December 23, 2010 (the "Security Agreement"), executed by i2a in consideration for HBC's grant of the i2a Loan and granting HBC a security interest in, among other personal business property of i2a, all machinery, equipment and furniture, inventory, accounts, instruments, general intangibles, chattel paper, all accessions, additions, replacements, and substitutions relating to any of the foregoing, and all records of any kind relating to the foregoing (including insurance, general intangibles, and other accounts proceeds);

    3. That certain Change In Terms Agreement dated July 15, 2011, changing certain terms of the Loan; and

    4. That certain Change In Terms Agreement dated March 13, 2012, changing certain terms of the Loan.

True copies of the foregoing i2a Loan Documents are attached hereto as **Exhibit A**.

D. HBC asserts that the obligations owing to HBC are secured by a continuing security interest in all business personal property of i2a, including all of i2a's accounts, inventory, chattel paper, contract rights, equipment, machinery, and general intangibles, and the proceeds and products thereof (hereinafter collectively referred to as the "Pre-Petition Collateral"). The specific collateral of HBC is described in the Loan Documents, including in particular the Security Agreement set forth in Recital C above. HBC asserts that it has perfected its security interest in the Debtor's personal business property by filing various financing

statements with the California Secretary of State. True copies of the foregoing UCC financing statements are attached hereto as **Exhibit B**.

E. i2a represents that it is not presently aware of the existence of any liens or encumbrances senior to those of HBC against the Pre-Petition Collateral or the Post-Petition Collateral (as defined below) and has not, to the best of its belief, voluntarily granted any senior encumbrance.

F. i2a requires the continued use of HBC's Pre-Petition Collateral, including the Cash Collateral proceeds thereof, to operate and preserve its business and to maximize return for its creditors. i2a seeks approval of such use from HBC and from this Court on the terms and conditions set forth herein, whereby i2a seeks to provide adequate protection of HBC's interest in the Pre-Petition Collateral.

G. As used herein, the term "Post-Petition Collateral" shall mean the "Collateral," as described in the Commercial Security Agreement, which is created or comes into existence after the Petition Date.

H. i2a has represented to HBC that it needs to operate for a limited period of time in order to enable it to restructure its financial affairs, including potentially obtaining new investors or selling its assets as a going concern. i2a has further represented that it will operate according to a budget and cash flow projection during the time necessary to accomplish the foregoing. Attached hereto as **Exhibit "C"** is a true copy of said operating budget and cash flow projection (the "Cash Flow Budget") for month of December 2014. i2a shall provide to HBC for its approval a further operating budget and cash flow projection for each subsequent month of this stipulation as set forth in paragraph 4 below. The term "Cash Flow Budget" refers to Exhibit C and to such approved subsequent operating budget and cash flow projections in effect from time to time, including any which may be approved as part of an agreement by the parties in writing to extend the term of this stipulation pursuant to paragraph 13 below.

I. Subject to certain conditions, HBC has agreed, as set forth herein, to permit i2a to use its Pre-Petition Collateral and Cash Collateral on a basis that will provide for adequate protection and continuing security.

J.  To the best of i2a's present knowledge, neither it nor its attorney are aware that there exist grounds to challenge the validity, enforceability, or priority of the pre-petition claims or liens of HBC in this case or that i2a has claims for damages or affirmative relief against HBC; notwithstanding the foregoing, i2a reserves all of its rights to conduct further investigation or due diligence and assert claims arising therefrom.

K.  On or about November 3, 2014, i2a and HBC executed a Stipulation For Use Of Cash Collateral And For Adequate Protection Secured By Liens On Property Of The Estate and filed it with the Court (the "Interim Cash Collateral Stipulation") (Dkt. No. 19).

L.  On November 10, 2014, the Court entered an Order approving the Interim Cash Collateral Stipulation (Dkt. No. 36). The Interim Cash Collateral Stipulation expires on December 1, 2014.

M.  Subject to Court approval, i2a and HBC have agreed to relief from the automatic stay pursuant to the terms and conditions set forth in the Stipulation Granting Secured Creditor Heritage Bank Of Commerce Relief From The Automatic Stay (the "Stipulation for Relief from Stay"), filed concurrently herewith.

## AGREEMENT

Now, therefore, the Debtor and HBC agree as follows:

1.  <u>Truth of Recitals</u>.  i2a acknowledges and warrants the truth and accuracy of each of the recitals set forth above.  Recital J is binding upon i2a but not upon any subsequently appointed Chapter 11 or Chapter 7 trustee, upon any duly appointed Official Unsecured Creditors Committee (the "Committee") or upon any other parties in interest in the Case.

2.  <u>Existing Agreements</u>.  Except as expressly modified by this Stipulation, all terms and conditions of the Loan Documents shall remain in full force and effect.

3.  <u>Outstanding Obligations</u>.  The Debtor acknowledges that, as of the Petition Date, the outstanding principal indebtedness owed to HBC pursuant to the Loans is $1,424,500.79. The foregoing amount does not include any interest or fees which have accrued or will hereinafter accrue, any applicable late charges, insurance premiums, collection costs or attorneys' fees and costs recoverable under the terms of the Loan Documents, which amounts

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1175822.3  -5-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-42391-CN

Case: 14-44239   Doc# 41   Filed: 12/04/14   Entered: 12/04/14 14:58:28   Page 5 of 13

shall be later calculated and added to the outstanding indebtedness and for which amounts the Debtor acknowledges liability.

4. <u>Cash Flow Budget</u>.

(a) i2a has forecasted that it will achieve certain revenues and expenses for the month of December 2014 as set forth in the Cash Flow Budget, which include payments to HBC. No later than 4:00 p.m. on the 22nd day of each month, commencing on December 22, 2014, i2a shall deliver to HBC a proposed operating budget and cash flow projection (in the same format as **Exhibit "C"**) for the subsequent month. With the exception of the attached budget for December 2014, any proposed operating budget and cash flow projection shall include adequate protection payments to HBC in an amount not less than $8,000.00 per month. HBC shall authorize as part of the operating budget, an adequate protection payment to Wells Fargo bank of $ 1,500.00 per month. HBC may approve or disapprove any supplemental operating budget and cash flow projection in its sole discretion. Upon written approval by HBC, each such subsequent operating budget and cash flow projection shall become the Cash Flow Budget (as that term is used herein) for the period which it covers, and i2a shall promptly file a copy of the approved Cash Flow Budget with the Court.

(b) HBC consents to the use of Cash Collateral consistent with the Cash Flow Budget and subject to the other terms and conditions of this Stipulation. Notwithstanding the foregoing sentence, i2a's revenues and expenses may vary from single line items within the Cash Flow Budget provided that i2a is not otherwise in default of this Stipulation and i2a otherwise complies with the provisions of the following paragraphs and provided that at the end of each week: (i) i2a's actual total weekly disbursements paid in cash, for any weekly reporting period, will not have a negative variance in excess of ten percent (10%) from the total weekly "ESTIMATED EXPENSE" shown in the Cash Flow Budget for the particular week and (ii) i2a's actual net cash balance for the reporting period does not have a negative variance greater than ten percent (10%) for the particular week from the Ending Cash balance shown in the Cash Flow Budget. Irrespective of whether Debtor meets its income or expense projections, Debtor

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1175822.3 -6-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-04239

Case: 14-44239   Doc# 41   Filed: 12/04/14   Entered: 12/04/14 14:58:28   Page 6 of 13

shall pay to HBC the amounts shown in the Cash Flow Budget to be paid to HBC (referred to as "The Bank (int.)" in the listed expenses) on the dates set forth therein.

5. Achievement Of Financial Plan; Reporting.

(a) i2a shall comply with its existing reporting obligations under the Loan Documents.

(b) No later than by 4:00 p.m. Tuesday of each week, i2a shall deliver to HBC a report showing actual cash received and actual expenses for the preceding week, in the same format as the Cash Flow Budget, together with a list of the i2a account debtors who made payments to i2a during the preceding week and the amount of each such payment.

(c) No later than by 4:00 p.m. of the first Tuesday of each month, commencing on December 2, 2014, i2a shall deliver to HBC an account receivables aging report that specifies for each account receivable: (i) the customer name; (ii) all relevant transaction information (e.g. order number, purchase order number, and/or invoice number); (iii) the aged amount(s) due and owing; and (iv) the payment terms.

(d) In addition, i2a shall deliver to HBC as and when such documents are filed with the relevant taxing authority copies of the following:

(i) Its federal and state tax returns; and

(ii) Sales tax returns or reports.

(e) As soon each becomes available to i2a, i2a shall deliver to HBC a copy of its Monthly Operating Report and a copy of the monthly statement for its debtor in possession account for each month commencing with October 2014.

(f) Said reports and documents shall be delivered by email or facsimile transmission and regular mail addressed as follows:

> Mr. Raul Garcia
> Heritage Bank of Commerce
> 150 Almaden Blvd.
> San Jose, CA 95113
> raul.garcia@herbank.com
> Fax: (408) 792-4005

(g) In the event that: (i) i2a's actual total expenses, paid in cash, for any

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

weekly reporting period, has a negative variance in excess of ten percent (10%) from the total amount shown in the Cash Flow Budget for "ESTIMATED EXPENSES" for the particular week or (ii) i2a's actual Ending Cash balance for the reporting period has a negative variance greater than ten percent (10%) from the Ending Cash balance shown in the Cash Flow Budget for the particular week; then unless i2a obtains HBC's written consent to any such deviation, the deviation shall be an event of default under Section 11 of this Stipulation and the Loan Documents for which no notice or opportunity to cure need be given by HBC.

6. Post-Petition Replacement Lien.

(a) Liens. Solely as adequate protection for any diminution in value, following the Petition Date, of HBC's asserted security interests under the Loan Documents, and subject to subsection (b) below, HBC is hereby granted, effective as of the Petition Date, a post-petition replacement lien (the "Post-Petition Replacement Lien") on all presently-owned or hereafter-acquired assets of i2a, to the same extent as it had a valid and perfected security interest in the (i) Pre-Petition Collateral, including all Cash Collateral, and (ii) all proceeds therefrom. Said Post-Petition Replacement Lien shall be secured in accordance with the provisions of Bankruptcy Code sections 361 and 363(e) and, to the extent that the Post-Petition Replacement Lien together with any other lien granted by Debtor for the benefit of HBC is insufficient to adequately protect HBC's claims, then HBC shall also be allowed an administrative priority claim in accordance with the provisions of Bankruptcy Code section 507(b) for any deficiency. The Debtor shall execute such documents as HBC requires to perfect its security interests. HBC may file or record this Stipulation, including any order entered in connection with this Stipulation to evidence the perfection of the security interests granted hereunder, but entry of the Bankruptcy Court's order approving this Stipulation shall constitute a validly perfected first lien and security interest upon the Post-Petition Collateral, to the same extent as validly perfected in the Pre-Petition Collateral, without further act.

As part of this stipulation, the Debtor also grants a replacement lien in favor of Wells Fargo Bank, which lien shall have the same validity and priority as any perfected prepetition lien held Wells Fargo.

(b) Notwithstanding anything contained in this Stipulation to the contrary, HBC is not granted any security interest in avoidance actions under 11 U.S.C. §§ 544-551, inclusive.

7. <u>Affirmative Covenant: Payments To HBC</u>. Unless HBC otherwise agrees in writing, payments shall be made to HBC in accordance with the Cash Flow Budget.

8. <u>Affirmative Covenant: Inspection Rights; Reporting</u>. i2a shall continue to have such reporting obligations as are set forth in the Loan Documents. i2a shall also provide to HBC such other reports or information as HBC may reasonably request and shall permit HBC to inspect its collateral during normal business hours upon reasonable notice.

9. <u>Affirmative Covenant: Payment of Certain Expenses</u>. i2a agrees that, during the term of this Stipulation, and to the extent provided for in the Cash Flow Budget, i2a will pay each of the following expenses, to the extent they arise following the Petition Date, on a current basis: payroll, payroll-related taxes and withholdings, other tax obligations, workers compensation, employee benefits and insurance.

10. <u>Carve-out From Replacement Lien</u>. Any provision of this Stipulation or the Loan Documents to the contrary notwithstanding, the Post-Petition Replacement Lien and super priority claim granted to HBC and the replacement lien granted to Wells Fargo under Section 6 above shall be subject and subordinate to a carve-out (the "Carve-Out") for the following: the payment of compensation and expense reimbursement to any trustee hereafter appointed in this action. Further, such Carve-Out shall include quarterly fees required to be paid, pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court. Except as specifically set forth herein, no other carve-outs shall be permitted.

11. <u>Default; Remedies Upon Default</u>.

(a) The occurrence of any of the following shall be an event of default under this Stipulation:

(1) <u>Default In Performance</u>. Any failure of the Debtor to perform fully or satisfy the promises, duties, covenants, reporting requirements, provisions or terms of this Stipulation or any breach of a representation or warranty herein shall be an event of default

under this Stipulation unless timely cured (where cure is permitted and is possible). Further, the occurrence of any Event of Default under the Loan Documents, apart from the borrower's failure to make its regular payments, insolvency, financial condition or filing of a bankruptcy petition, shall be an event of default under this Stipulation unless timely cured if cure is permitted and possible. A default under this Stipulation shall entitle HBC to enforce all of its rights and remedies.

(2) <u>Dismissal/Conversion</u>. Any conversion or dismissal of the above-captioned case shall be a default hereunder also entitling HBC to exercise any and all rights and remedies under this Stipulation.

(b) Upon the occurrence of an event of default, HBC shall provide the Debtor and, so long as this case is pending, its counsel of record with written notice stating that a default has occurred (which notice may be given by facsimile transmission or electronic mail). Unless a cure period is otherwise waived in this Stipulation, upon the failure of the Debtor to cure such default by 5:00 p.m. on the third business day following the day on which such notice is given, the Debtor's right to use cash collateral shall terminate at such time, and the Debtor shall stop using cash collateral of HBC at that time.

(c) In the event that a default is not cured within its specified period, the parties hereto agree that, subject to approval of the Court, HBC may apply for an order permitting relief from the automatic stay upon five days' written notice to the Debtor, its counsel, a Trustee if any, the U.S. Trustee, counsel for the Committee or, if such committee is disbanded or not formed, the twenty largest unsecured creditors and other persons or entities who have requested notice in this Case. Such notice may be by email transmission or by facsimile transmission if such transmission is available, but otherwise shall be by such means as may be available to permit expedited delivery. Pending the determination of HBC's motion, the Debtor shall have no right to use any cash collateral. Nothing herein shall prohibit the Debtor from making a motion before the Bankruptcy Court to request continued use of cash collateral.

d. Any exercise of rights and remedies by HBC with respect to property of the estate is subject to Section 362(a) of the Bankruptcy Code.

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1175822.3 -10-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-44239

Case: 14-44239 Doc# 41 Filed: 12/04/14 Entered: 12/04/14 14:58:28 Page 10 of 13

12. **Reservation of Rights.** HBC shall have the right to waive any of the obligations of the Debtor or the rights, remedies, or powers granted herein, including i2a's reporting requirements; and HBC shall have no obligation or duty to any other person or party with respect to the waiver or exercise of said obligations, rights, remedies or duties. Delay in or failure to exercise any rights, remedies or duties shall not subject HBC to any liability to any other person or party, nor shall any other person or party rely upon, or in any way assert as a defense to any obligation owing to HBC such delay or failure.

13. **Term.** Except as otherwise provided in paragraph 19 of this Stipulation, i2a's right to use cash collateral of HBC shall become effective upon the entry of an order by the Bankruptcy Court approving the terms of this Stipulation and shall continue in effect through February 28, 2015, at which time i2a's right to use of such cash collateral, whether Pre-Petition Collateral or Post-Petition Collateral, shall terminate, except as otherwise agreed in writing by HBC and i2a in a written stipulation filed with the Court. In the event that i2a and HBC agree in writing to a later time, then i2a's use of cash collateral may continue subject to the terms and conditions of this stipulation and the Court's order approving it.

14. **Attorneys Fees and Costs.** To the extent permitted by law, i2a shall pay HBC's expenses, including its attorneys' fees and costs, incurred in the negotiation and preparation of this Stipulation. The payment of the expenses described above shall be in addition to any costs, expenses, fees, interest or other charges that may accrue pursuant to the Loan Documents.

15. **Waiver of Right to Seek Recovery of Fees and Costs.** i2a expressly waives all right to seek recovery of any fees (including attorney fees) and costs arising out of or related to the state-court action titled *Heritage Bank of Commerce v. i2a Technologies, Inc., et al.*, Santa Clara Sup. Ct., Case No. 113CV252904.

16. **Binding Effect.** This Stipulation shall be binding upon and inure to the benefit of the parties hereto and their successors or assigns. Each individual signatory to this Stipulation warrants that he/she is authorized to enter into this Stipulation on behalf of the party on whose behalf this Stipulation is executed.

17. **Definitions.** In addition to the terms defined hereinabove, the following term as

| | |
|---|---|
| 1 | used herein shall have the definition specified: "Cash Collateral" shall have the definition set |
| 2 | forth in Bankruptcy Code section 363(a). |
| 3 | 18. <u>Counterparts</u>. This Stipulation may be executed in counterparts. |
| 4 | 19. <u>Approval of Stipulation for Relief from Stay</u>. This Stipulation and the Parties' |
| 5 | agreement thereto are conditioned upon approval by the Bankruptcy Court of the Stipulation for |
| 6 | Relief from Stay. Notwithstanding the term specified in paragraph 13 of this Stipulation, if i2a |
| 7 | fails to obtain entry of an order approving the Stipulation for Relief from Stay on or before |
| 8 | January 8, 2015, then i2a's right to use cash collateral of HBC under this Stipulation shall |
| 9 | terminate on January 8, 2015. |
| 10 | /// |
| 11 | /// |
| 12 | /// |
| 13 | /// |
| 14 | /// |
| 15 | /// |
| 16 | /// |
| 17 | /// |
| 18 | /// |
| 19 | /// |
| 20 | /// |
| 21 | /// |
| 22 | /// |
| 23 | /// |
| 24 | /// |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

HOPKINS & CARLEY
ATTORNEYS AT LAW
SAN JOSE

114\1175822.3 -12-
SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-44239

Case: 14-44239  Doc# 41  Filed: 12/04/14  Entered: 12/04/14 14:58:28  Page 12 of 13

20. **Approval By Court.** This Stipulation and the parties' agreement thereto are conditioned upon approval of the Bankruptcy Court.

Dated: December 3, 2014

| I2A TECHNOLOGIES, INC. | HERTIGAGE BANK OF COMMERCE |
|---|---|
| By: /s/ | By: /s/ |
| Name: | Name: RAUL GARCIA |
| Title: PRESIDENT | Title: VICE PRESIDENT |

**APPROVED AS TO FORM:**

| KORNFIELD, NYBERG, BENDES & KUHNER, P.C. | HOPKINS & CARLEY, A Law Corporation |
|---|---|
| By: /s/ | By: /s/ |
| Eric A. Nyberg | Stephen J. Kottmeier |
| Attorneys for Debtor and Debtor-In-Possession i2a Technologies, Inc. | Attorneys for Secured Creditor Heritage Bank of Commerce |

### Certification

I have read the foregoing stipulation; to the best of my knowledge, information, and belief, formed upon reasonable inquire, the terms of the stipulation are in conformity with the Court's Guidelines For Cash Collateral And Financing Motions And Stipulations. I understand and have advised the Debtor In Possession that the court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the court determines that a material element of the stipulation is not disclosed in the Introductory Statement.

KORNFIELD, NYBERG, BENDES & KUHNER, P.C.

By: /s/
Eric A. Nyberg
Attorneys for Debtor and Debtor-In-Possession i2a Technologies, Inc.

-13-

SECOND INTERIM STIPULATION FOR USE OF CASH COLLATERAL AND FOR ADEQUATE PROTECTION SECURED BY LIEN ON PROPERTY OF THE ESTATE – CASE NO. 14-44239-CN